# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IRVIN SHIPLEY, JOHN DIXON, BRIAN MATTHEWS, ROBBY ORBIN, RYAN WALKER, BRANDON STEPHENSON, JACOB SHAFFER, TYLER SHUEY, COLE BIER, and MACLEAN WALTON,

                Plaintiffs,

      vs.

JEFFREY SCHAEFFER, in his individual capacity, THE PENNSYLVANIA STATE POLICE, a Commonwealth agency,

                Defendants.

No. 2:25-cv-631

TYPE OF PLEADING:

**COMPLAINT**

**Filed on behalf of Plaintiffs**

**Counsel of Record for this Party:**

Joseph V. Charlton, Esquire
Pa. I.D. No. 200429

D. Robert Marion, Jr., Esquire
Pa I.D. No. 313469

Brian D. Farrington, Esquire
Pa I.D. No. 325641

CHARLTON LAW
617 S. Pike Road
Sarver, PA 16055
Telephone:  724.540.1161

Michael Deriso, Esquire
Pa I.D. No. 76555

DERISO LAW GROUP
429 Fourth Ave. #2101
Pittsburgh, PA  15219
Telephone:  412.765.1100

**JURY TRIAL DEMANDED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRVIN SHIPLEY, JOHN DIXON, | : | No. 2:25-cv-631 |
| BRIAN MATTHEWS, ROBBY ORBIN, | : | |
| RYAN WALKER, BRANDON | : | |
| STEPHENSON, JACOB SHAFFER, | : | |
| TYLER SHUEY, COLE BIER, and | : | |
| MACLEAN WALTON, | : | |
| vs. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| JEFFREY SCHAEFFER, in his individual | : | |
| capacity and THE PENNSYLVANIA STATE | : | **JURY TRIAL DEMANDED** |
| POLICE, a Commonwealth agency, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

AND NOW, come Plaintiffs, Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton, by and through their attorneys Joseph V. Charlton, Esquire, D. Robert Marion Jr., Esquire, Brian D. Farrington, Esquire, CHARLTON LAW, Michael Deriso, Esquire, and DERISO LAW GROUP who file this Complaint and aver the following:

## INTRODUCTION

1.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging that they were targeted by Jeffrey Schaeffer, in his individual capacity. Defendant Schaeffer used his position as a Pennsylvania State Police Trooper to initiate frivolous criminal investigations against Plaintiffs because of his personal animus towards them. These investigations resulted in Plaintiffs being placed on administrative duty which resulted in

a significant loss of overtime, a diminution of Plaintiffs' personal and professional reputations, a reduction in their effectiveness as law enforcement officers, and negative impacts for the communities served by Plaintiffs.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343 and has supplemental jurisdiction to hear Plaintiffs' state claims under 28 U.S.C. §1367(a).

3.    Venue is appropriate in the Western District of Pennsylvania because it is where the cause of action arose and is a district in which Defendants regularly conduct activity.

## PARTIES

4.    Plaintiff Irvin Shipley is an adult individual residing at 19 South 7th Street, Youngwood, Pennsylvania, 15697. Plaintiff Shipley is a Deputy Sheriff with Westmoreland County Pennsylvania.

5.    Plaintiff John Dixon is an adult individual residing at 181 Dunn Road, Greensburg, Pennsylvania 15601. Plaintiff Dixon is a Deputy Sheriff with Westmoreland County Pennsylvania.

6.    Plaintiff Brian Matthews is an adult individual residing at 319 Birkdale Drive, Greensburg, Pennsylvania 15601. Plaintiff Matthews is a Deputy Sheriff with Westmoreland County Pennsylvania.

7.    Plaintiff Robby Orbin is an adult individual residing at 900 Roosevelt Street, Youngwood, Pennsylvania 15697. Plaintiff Orbin is a Deputy Sheriff with Westmoreland County Pennsylvania.

8.     Plaintiff Ryan Walker is an adult individual residing at 3970 Route 981, Mount Pleasant, Pennsylvania 15666. Plaintiff Walker is a Deputy Sheriff with Westmoreland County Pennsylvania.

9.     Plaintiff Brandon Stephenson is an adult individual residing at 2716 Raymond Ave., Latrobe, Pennsylvania 15650. Plaintiff Stephenson is a Deputy Sheriff with Westmoreland County Pennsylvania.

10.     Plaintiff Jacob Shaffer is an adult individual residing at 269 Vista Drive, Apollo, Pennsylvania 15613. Plaintiff Shaffer is a Deputy Sheriff with Westmoreland County Pennsylvania.

11.     Plaintiff Tyler Shuey is an adult individual residing at 877 Middletown Road, New Stanton, Pennsylvania 15672. Plaintiff Shuey is a Deputy Sheriff with Westmoreland County Pennsylvania.

12.     Plaintiff Cole Bier is an adult individual residing at 254 Southwest Avenue, Greensburg, Pennsylvania 15601. Plaintiff Bier is a Deputy Sheriff with Westmoreland County Pennsylvania.

13.     Plaintiff Maclean Walton is an adult individual residing at 8320 Delaware Avenue, Irwin, Pennsylvania 15642. Plaintiff Walton is a Deputy Sheriff with Westmoreland County Pennsylvania.

14.     Plaintiffs are all members of the Westmoreland County Fugitive Apprehension Unit (hereinafter referred to as "FAU.").

15.     Defendant, Jeffrey Schaeffer is an adult individual and at all times material hereto was employed as an officer with the Pennsylvania State Police with an office at

100 North Westmoreland Avenue, Greensburg, Pennsylvania 15601, and at all times material hereto, Defendant Schaeffer acted under color of law. He is sued in his individual capacity.

16.    Defendant Pennsylvania State Police is a governmental body and is the employer of the individual Defendant Schaeffer. Its official address is 1800 Elmerton Avenue, Harrisburg, Pennsylvania 17110.

17.    Upon information and belief, Defendant Schaeffer is a citizen of the United States and resident of the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

### A. The Fugitive Apprehension Unit

18.    The FAU is a specialized unit within the Westmoreland County Sheriff's Office.

19.    The FAU is comprised of eight (8) to twelve (12) deputies depending on the staffing levels of the Westmoreland County Sheriff's Office.

20.    These eight (8) to twelve (12) deputies can operate as two smaller teams of four (4) to five (5) deputies, or, when necessary, as a whole

21.    The FAU currently fields three supervisors consisting of a Sergeant and Corporal, who serve as full time Field Supervisors for all operational, tactical, and administrative aspects, and a Sergeant who provides support services and acts as a backup Field Supervisor.

22.    The primary responsibilities of the FAU are as follows:

a.  Serve criminal bench warrants issued by Courts of Common Pleas;

     b.   Serve criminal bench and arrest warrants issued by Magisterial District Justices; and

     c.   Apprehend fugitives from other jurisdictions that are located in Westmoreland County, Pennsylvania.

23.     The secondary responsibilities of the FAU are as follows:

     a.   Making arrests for any crimes committed in the presence of the members of the FAU while they are carrying out the primary responsibilities;

     b.   Assisting the prosecution of any crimes committed in the presence of members of the FAU while they are carrying out their primary responsibilities;

     c.   Assisting other law enforcement agencies as requested; and

     d.   Assisting the Westmoreland County Sheriff's office as needed.

24.     Plaintiff Irvin Shipley is the current Sergeant of the FAU.

25.     Plaintiff Sgt. Shipley has served with the Westmoreland County Sheriff's Office for fourteen (14) years and has served with the FAU for twelve (12) of those years.

26.     Plaintiff Brian Matthews is the current Corporal of the FAU.

27.     Plaintiff Cpl. Matthews has served with the Westmoreland County Sherriff's Office for twenty-eight (28) years and has served with FAU for twenty (20) of those years.

28.     Plaintiff John Dixon was also serving as a Sergeant with the FAU at the time of the events in question.

29.     Plaintiff Sgt. John Dixon is a retired Pennsylvania State Police Trooper with twenty-three (23) years of service and eight (8) years of service with the Westmoreland County Sheriff's Office.

30.     The remaining Plaintiffs are all members of the FAU with various lengths of service in the FAU and with the Westmoreland County Sheriff's Office.

## B.  Issues with the Pennsylvania State Police—Uniontown

31.     On or about August of 2022, both teams of the FAU led by Plaintiff Sgt. Shipley and Plaintiff Sgt. Dixon served a felony bench warrant at a hotel in Fayette County Pennsylvania.

32.     Prior to the service of the warrant, the FAU requested assistance from the Pennsylvania State Police (hereinafter "PSP") located in Uniontown, Pennsylvania.

33.      PSP advised the FAU that they were not available to assist.

34.     During the service of the warrant, the FAU located an illegal firearm and reported the same to PSP Uniontown in order for PSP to investigate and prosecute the case.

35.     Members of PSP Uniontown accused members of the FAU of "acting illegally" during the service of the warrant.

36.     Defendant Schaeffer was the Station Commander of PSP Uniontown at the time of the service of the warrant.

37.     On or about December of 2022, an FAU team led by Plaintiff Sgt. Shipley served a felony bench warrant at a hotel located in Fayette County, Pennsylvania.

38.     Prior to the service of the warrant, the FAU requested assistance from PSP Uniontown.

39.     Once again, PSP advised the FAU that they were not available to assist.

40.     The subject of the warrant fled from the FAU and a foot chase ensued.

41.     During the case, the subject of the warrant threw away an illegal firearm which was recovered by the FAU.

42.     The FAU contacted PSP Uniontown to investigate the firearm and prosecute the case.

43.     Defendant Schaeffer became directly involved and accused the members of the FAU of "acting illegally."

44.     Defendant Schaeffer contacted the Chief Deputy of the Westmoreland County Sheriff's Office and made a formal complaint.

45.     Defendant Schaeffer also demanded that the FAU be investigated and disciplined.

46.     The Westmoreland County Sheriff's Office, in consultation with the Westmoreland County District Attorney's Office, conducted an investigation and determined that the FAU did not violate any laws or policies.

47.     Defendant Schaeffer was informed of the results of this investigation and expressed his dissatisfaction with the results but declined an invitation to speak again with the Westmoreland County Sheriff's Office.

48.     During the investigation, per the policy of the Westmoreland County Sheriff's Office, all members of the FAU were placed on administrative duty and removed from the field.

### C. Issues With Pennsylvania State Police—Greensburg

49.     It is believed, and therefore averred, that on or about August of 2024, Defendant Schaeffer was transferred from Troop B in Uniontown, Pennsylvania to Troop A in Greensburg, Pennsylvania.

50.     It is believed, and therefore averred, that Defendant Schaeffer was demoted from Station Commander to Criminal Investigation Section Commander when he was moved to Greensburg.

51.     It is believed, and therefore averred, that this transfer and/or demotion occurred because Defendant Schaeffer misled his Troop Commander regarding overtime on homicide and major case investigations.

52.     On or about December 12, 2024, a team from FAU, led by Plaintiff Sgt. Shipley, responded to a request for assistance from the Mount Pleasant Police Department for an active shooter.

53.     The FAU decided to respond because they heard over the police radio that the Pennsylvania State Police were not available.

54.     Upon arrival, the FAU team was informed by Mount Pleasant Borough police that they had probable cause to arrest the individual for a felony assault with a firearm.

55.    The Mount Pleasant Police requested that the FAU attempt to apprehend the subject.

56.    The FAU were given the address of the subject, which was provided by the subject's father.

57.    The address was located within the Borough of Mount Pleasant.

58.    Members of the FAU, along with other law enforcement officers from various agencies, proceeded to the residence, obtained consent to search the residence from the subject's stepmother, and then searched the residence without incident.

59.    However, the subject was not located in the residence, so Plaintiff Sgt. Shipley provided his business card to the stepmother and told her to call if she had any additional information on the subject's whereabouts.

60.    The FAU continued their efforts to track and locate the subject who ultimately turned himself into members of the FAU later that day.

61.    The Mount Pleasant Borough Police determined that the incident had started outside of the Borough of Mount Pleasant, so they turned the investigation over to PSP Greensburg.

62.    It is believed, and therefor averred, that on December 12, 2024, Defendant Schaeffer sought out the suspect's stepmother and attempted to solicit statements against the FAU deputies from her.

63.    It is believed, and therefore averred, that a few days after the December 12, 2024, incident, that Defendant Schaeffer was once again attempting to start a criminal investigation into the FAU.

64.    It is believed, and therefore averred, that Defendant Schaeffer ordered numerous lower-level supervisors and troopers to initiate an investigation, but all refused because it was unclear what they were investigating, and it did not appear that anyone had made a complaint against the FAU.

65.    It is believed, and therefore averred, that Defendant Schaeffer attempted to justify the investigation by stating that members of the FAU lacked legal authority for their actions, illegally entered a residence, and illegally detained someone.

66.    Police radio transcripts and recordings confirm that Plaintiff Sgt. Shipley called out that he had consent to search the residence in question.

67.    It is believed, and therefore averred, that Defendant Schaeffer was insisting that PSP investigate the FAU and that he wanted members of the FAU arrested "for something."

68.    It is believed, and therefore averred, that Defendant Schaeffer told a member of PSP that if the member questioned Defendant Schaeffer's intent to investigate the FAU that he would consider it interference with an official police investigation.

69.    It is believed, and therefore averred, that a state trooper familiar with the FAU was called into Defendant Schaeffer's office where Defendant Schaeffer proceeded to interrogate the officer about the FAU and specifically made disparaging remarks about Plaintiff Sgt. Dixon's service as a state trooper, suggesting that Plaintiff Sgt. Dixon was reckless.

70.     On or about December 20, 2024, Defendant Schaeffer contacted the Westmoreland County Sherriff's Office and requested that Sheriff Albert call him about an incident involving his deputies.

71.     On the same date as the phone call, Defendant Schaeffer came to the Westmoreland County Sheriff's Office and met with Sheriff Albert and Solicitor Marco Sylvania and informed them that members of the FAU were being investigated for an improper search and an unlawful detention.

72.     Sherriff Albert initiated an internal investigation and, per policy, the members of the FAU were placed on administrative duty and removed from the field.

73.     The internal investigation concluded that the FAU did not violate any laws or policies during the December 12, 2024 incident.

74.     It is believed, and therefore averred, that Defendant Schaeffer continued to press for an investigation against Plaintiffs and ultimately assigned PSP Sgt. Thomas Dubovi to investigate the FAU.

75.     It is believed, and therefore averred, that on or about January 2, 2025, Defendant Schaeffer assisted in the preparation of and/or approved the submission of a search warrant application, citing the crime of "Burglary," for video surveillance of Plaintiffs attempting to apprehend the active shooter.

76.     On or about January 21, 2025, the Westmoreland County Sheriff filed a Letter of Complaint against Defendant Schaeffer. Said letter is attached as Exhibit A and fully incorporated herein.

77.     On or about January 22, 2025, Plaintiff Sgt. Shipley became aware that he and Defendant Schaeffer were involved in a high-profile physical altercation while both of them were attending high-school in 1995. The altercation resulted in suspensions from school.

78.     It is believed, and therefore averred, that Defendant Schaeffer's source of animus against the FAU stems, in part, from this high-school altercation.

79.     Because of this high-school altercation, Defendant Schaeffer had a conflict of interest in the investigation of the FAU and/or Plaintiff Sgt. Shipley.

80.     It is believed, and therefore averred, that Defendant Schaeffer did not disclose this conflict of interest to his superiors during his time as Uniontown Station Commander or later as Troop A Criminal Investigation Section Commander.

81.     On or about January 23, 2025, PSP Sgt. Dubovi and PSP Cpl. Jesse Dumm met with the Westmoreland County Sheriff and Solicitor Marco Sylvania. During this meeting Sgt. Dubovi stated that the investigation against the FAU was now focused on a deputy being "physical" with a female that was detained.

82.     Sgt. Dubovi requested an interview with Plaintiff Sgt. Shipley.

83.     It is believed, and therefore averred, that on or about January 23, 2025, Defendant Schaeffer confronted Sgt. Dubovi about his investigation of Plaintiffs.

84.     It is believed, and therefore averred, that Sgt. Dubovi informed Defendant Schaeffer that "there is nothing" and that all evidence confirms that any accusations against Plaintiffs were unfounded.

85.     It is believed, and therefore averred, that Defendant Schaeffer became irritated and ordered Sgt. Dubovi to charge Plaintiffs with "something."

86.     On or about January 24, 2025, the Westmoreland County Sheriff had a conversation with PSP Captain Surra in relation to Defendant Schaeffer. PSP Captain Surra stated that Defendant Schaeffer did not have a vendetta against the members of the FAU and that Sgt. Dubovi was the person conducting the investigation against the members of the FAU.

87.     On or about January 27, 2025, the Westmoreland County Sheriff's Office and members of the FAU received a letter of commendation from the Mount Pleasant Police Department for their assistance during the December 12, 2024 incident. Said letter is attached as Exhibit B and fully incorporated herein.

88.     It is believed, and therefore averred, that on or about January 27, 2025, that PSP Captain Surra was informed that the investigation into members of the FAU was based on personal animus that Defendant Schaeffer had against Plaintiff Sgt. Shipley because of the high-school fight.

89.     It is believed, and therefore averred, that on or about January 28, 2025, that PSP Captain Surra instructed Sgt. Dubovi to end the investigation and submit his findings to the Westmoreland County District Attorney's Office.

90.     It is believed, and therefore averred, that Defendant Schaeffer reviewed Sgt. Dubovi's investigation prior to its submission to the Westmoreland County District Attorney's Office.

91.     On or about February 4, 2025, the Westmoreland County Sheriff's Office was informally advised that the investigation had concluded and that the Westmoreland County District Attorney's Office would not be filing any charges against Plaintiffs.

92.     On or about February 4, 2025, First Assistant District Attorney Chuck Washburn informed Westmoreland County Sheriff James Albert that he advised Sgt. Dubovi that no charges were to be filed against Plaintiffs.

93.     On or about February 10, 2025, after receiving no official notice of any determination, Sheriff Albert called Sgt. Dubovi requesting an update on the status of the investigation.

94.     Sgt. Dubovi advised that the investigation was closed and no criminal charges were being filed, and he emailed the Westmoreland County Sheriff confirming the closed status.

## D. Post Investigation Actions

95.     Due, in part, to the spurious investigation led by Defendant Schaeffer, the Westmoreland County Sheriff issued a policy that sheriff deputies would no longer transport incarcerated individuals for cases filed by PSP to the Magisterial District Judges.

96.     In 2006, the President Judge of the Westmoreland County Court of Common Pleas issued an Order directing the Westmoreland County Sheriff's Office to handle all transports to the Magisterial District Judges with the caveat that Magisterial District Judges would need to make other arrangements if the Sheriff indicates "an inability to transport on any given day."

97.     The Westmoreland County Sheriff indicated that his deputies cannot transport PSP defendants because "it puts Deputies in jeopardy of criminal investigation and or arrest due to what has occurred recently."

98.     It is believed, and therefore averred, PSP Capt. Surra became concerned with some of the statements made by individuals during PSP Sgt. Dubovi's investigation and requested that Sgt. Dubovi re-interview the people who were allegedly complaining about Plaintiffs.

99.     It is believed, and therefore averred, that Defendant Schaeffer confronted Sgt. Dubovi later in the day and forbade him from re-opening the investigation and said that "the investigation was closed, we know they were guilty but we just can't prove it."

100.     On or about March 25, 2025, a meeting regarding prisoner transports was held with the President Judge, several District Magistrates, the Sheriff and Chief Deputy, and PSP Capt. Surra in attendance.

101.     It is believed, and therefore averred, that at the meeting, Capt. Surra made false statements denying Defendant Schaeffer's involvement in the investigation and stating other agencies were investigated as well.

### E.  Policies and Procedures of the Pennsylvania State Police

102.     PSP maintains a list of policies and procedures that governs the actions of its employees.

103.     The following procedures are relevant to this case:

   a.  1.02:  "Unbecoming conduct is that type of conduct which could reasonably be expected to destroy public respect for Pennsylvania State Police officers

and/or confidence in the Department. Members shall not conduct themselves in a manner which is unbecoming to a police officer."

b. 2.13: "Members shall cooperate with all agencies engaged in the administration of justice, federal and state departments, and other public agencies providing all the aid and information permitted by existing regulations."

c. 2.33(A): "Commanders/supervisors are responsible for setting a tone and example of acceptable conduct for subordinate personnel. Acts of misconduct committed by Commanders/supervisors shall generally be viewed as more serious than if subordinate personnel had committed the same misconduct."

d. 6.01: "It is the policy of the Department that the treatment of, and interaction with, individuals, both within and outside of the Department, be held in the highest regard."

e. 6.02: "…each employee, as a representative of the Department and State government, has an obligation to adhere to high standards of honesty, integrity, and impartiality in their personal conduct."

f. 6.03: "Deportment: Employees shall conduct themselves at all times in such a manner as to reflect most favorably on the Department and the Commonwealth, thereby promoting good public relations. Undesirable conduct shall include immorality or any act or conduct not specifically mentioned in these rules which tends to bring the Department and/or Commonwealth into disrepute or reflects discredit upon the individual employee."

g. 6.03(1): "Conformance to laws: Employees shall conform to, and abide by, statutory laws and governmental regulations and shall uphold the Constitutions of the United States and of the Commonwealth."

h. 6.04(a): "Unprotected Speech: Employees are subject to disciplinary action for speech constituting treason, libel, slander, perjury, incitement to riot, and/or knowingly false statements or statements made with a reckless disregard for their truth regarding Department operations or personnel."

## F.  Damages

104.    While on administrative duties, Plaintiffs were unable to collect overtime for any FAU related details.

105.    Prior to being placed on administrative duties, Plaintiffs collected more overtime than any other deputy sheriffs in Westmoreland County.

106.    During all future prosecutions involving any of the Plaintiffs, the Plaintiffs will be required to reveal that they were investigated for inappropriate conduct while in the line of duty.

107.    Plaintiffs' reputation as effective deputy sheriffs and effective law enforcement officers has been diminished.

108.    Plaintiffs' reputation as law-abiding citizens has been diminished.

109.    The communities served by the Westmoreland County Sheriff's Office and the members of the FAU were damaged by a loss of law enforcement officers that could effectively serve the community.

### COUNT I—VIOLATION OF 42 U.S.C. § 1983:  INVASION OF RIGHT TO PRIVACY

**Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton v. Jeffrey Schaeffer, in his individual capacity**

110.    The preceding paragraphs are incorporated as if fully set forth herein.

111.    Under, 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

112.    "The Constitution protects us from extensive and intrusive governmental scrutiny not in furtherance of bona fide state goals." *Carbone v. Horner*, 682 F. Supp. 824, 826 (W.D. Pa. 1988).

113.    "The liberty interest in privacy encompasses ... the freedom from being required to disclose personal matters to the government.... The disclosure strand of the privacy interest in turn includes the right to be free from the government disclosing private facts about its citizens *and from the government inquiring into matters in which it does not have a legitimate and proper concern*." *Id*. (emphasis included) quoting *Ramie v. City of Hedwig Village, Texas*, 765 F.2d 490 (5th Cir.1985).

114.    The act of Defendant constitutes a violation of Plaintiffs' constitutional right to privacy.

115.    Defendant is a state actor subject to the United States Constitution.

116.    Defendant acted under the color of state law.

117.    Defendant acted intentionally and with callous and reckless disregard for Plaintiffs' clearly established constitutional rights.

118.    Defendant's investigation was motivated by personal animus against Plaintiffs.

119.    Defendant's investigation was not in furtherance of any bona fide state goals.

120.    The conduct of Defendant deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution of the United States including a violation of their Constitutional right to privacy.

121.    Defendant's acts were done with malice and were done with willful, wanton, or reckless disregard for Plaintiffs' federally protected constitutional and civil rights, thereby subjecting Defendant to punitive damages.

122.    As a direct and proximate result of the unlawful conduct of Defendant as aforesaid, Plaintiffs have suffered and will continue to suffer irreparable injury as follows:

    a.  The loss of overtime wages;

    b.  Damage to their reputation as deputy sheriffs;

    c.  Damage to their reputation as law enforcement officers;

    d.  Damage to their reputation as members of the Westmoreland County Fugitive Apprehension Unit;

    e.  Damage to their personal reputations;

    f.  Damage to their ability to effectively prosecute crimes; and

    g.  Other damages yet to be ascertained.

123.    As a result of the proximate result of the unlawful conduct of Defendant, Plaintiffs have suffered damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial.

124.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest, and costs as allowable by federal law.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendant for monetary, compensatory, and punitive damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

**A JURY TRIAL DEMANDED**

### COUNT II—VIOLATION OF 42 U.S.C. § 1983—VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS—RECKLESS INVESTIGATION

**Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton v. Jeffrey Schaeffer, in his individual capacity**

125.    The preceding paragraphs are incorporated as if fully set forth herein.

126.    Under, 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

127.    The following circumstances indicate a reckless investigation that shocks the conscience:  "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." ***Doe v. Univ. of Nebraska***, 451 F. Supp. 3d 1062, 1113 (D. Neb. 2020) (quoting ***Akins v. Epperly***, 588 F.3d 1178, 1184 (8th Cir. 2009)).

128.    Defendant Schaeffer attempted to coerce or threaten Plaintiffs by initiating false investigations against them and by demanding multiple meetings with their supervisors.

129.    Defendant Schaeffer purposefully ignored evidence relating to Plaintiffs' innocence because he rejected any suggestion or implication that Plaintiffs were innocent and should not be investigated.

130.    Defendant Schaeffer systematically pressured other state troopers to investigate Plaintiffs and to implicate them in criminal activities.

131.    The conduct of Defendant deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution of the United States including a violation of their Constitutional right to due process.

132.    Defendant's acts were done with malice and were done with willful, wanton, or reckless disregard for Plaintiffs' federally protected constitutional and civil rights, thereby subjecting Defendant to punitive damages.

133.    As a direct and proximate result of the unlawful conduct of Defendant as aforesaid, Plaintiffs have suffered and will continue to suffer irreparable injury as follows:

      a.  The loss of overtime wages;

      b.  Damage to their reputation as deputy sheriffs;

      c.  Damage to their reputation as law enforcement officers;

      d.  Damage to their reputation as members of the Westmoreland County Fugitive Apprehension Unit;

e.   Damage to their personal reputations;

f.   Damage to their ability to effectively prosecute crimes; and

g.   Other damages yet to be ascertained.

134.    As a result of the proximate result of the unlawful conduct of Defendant, Plaintiffs have suffered damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial.

135.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest, and costs as allowable by federal law.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendant for monetary, compensatory, and punitive damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

**A JURY TRIAL DEMANDED**

**COUNT III—VIOLATION OF 42 U.S.C. § 1983:  FAILURE TO TRAIN AND SUPERVISE AND *MONELL* CLAIM**

**Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton v. the Pennsylvania State Police**

136.    The preceding paragraphs are incorporated as if fully set forth herein.

137.    Defendant, the Pennsylvania State Police, by and through their agents and employees, and the individual Defendant herein, acting under color of state law, acted willfully, knowingly and purposefully, with the intent to deprive Plaintiffs of their rights, privileges and immunities secured by the Constitution and the laws of the United States,

in violation of 42 U.S.C. § 1983, particularly, they deprived Plaintiffs of their Constitutional right to privacy and their Constitutional right to due process.

138.    Local municipalities and governmental bodies are "persons" for purposes of Section 1983.

139.    In order to preserve the issue, Plaintiffs contend that ***Monell v. New York City Department of Social Services***, 436 U.S. 658 (1978), was erroneously decided to the extent that it held that the doctrine of respondeat superior does not apply to §1983 claims. ***City of St. Louis v. Praprotnik***, 485 U.S. 112, 148 (1988) (Stevens, J., dissenting); *see also **Oklahoma City v. Tuttle**,* 471 U.S. 808, 834–44 (1985) (Stevens, J., dissenting); ***Pembaur v. Cincinnati***, 475 U.S. 469, 489, n. 4 (1986)) (Stevens, J., concurring in part and concurring in judgment); *see also **Whitman, Government Responsibility for Constitutional Torts***, 85 Mich.L.Rev. 225, 236 n. 43 (1986).

140.    Recognizing that this Court is bound by ***Monell***, Plaintiffs aver that the Pennsylvania State Police are liable for the violation of Plaintiffs' constitutional right to privacy because it executed a policy and/or custom and/or practice and/or failed to adequately train and supervise Defendant Schaeffer in the exercise of his duties.

141.    Liability against a governmental unit may exist under § 1983 where a plaintiff's constitutional rights were violated based on a governmental custom, even if the custom has not been formally sanctioned.

142.    Additionally, a governmental unit may be liable under Section 1983 if there is a failure to supervise or train. *See **City of Canton v. Harris***, 489 U.S. 378 (1989).

143.    The Pennsylvania State Police failed to adequately supervise and train Defendant Schaeffer in the proper use of his investigative power.

144.    The Pennsylvania State Police failed to supervise Defendant Schaeffer even after knowing he was investigating Plaintiffs because of personal animus instead of bona fide state goals.

145.    The failure to supervise and train showed a "deliberate indifference" to the rights of persons with whom the Defendants would come into contact.

146.    Plaintiffs had a clearly established right to privacy and right to due process at the time of the complained of conduct.

147.    Defendant Pennsylvania State Police and Defendant Schaeffer knew, or should reasonably have known, of this right at the time of the complained of conduct as the right was clearly established at that time.

148.    The acts or omissions of Defendants, as described herein, deprived Plaintiffs of their constitutional rights.

149.    Defendants are not entitled to qualified or absolute immunity for the complained of conduct.

150.    The deliberately indifferent training and supervision provided by Defendant Pennsylvania State Police resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Pennsylvania State Police and were moving forces in the constitutional and federal violation and injuries complained of by Plaintiffs.

151.    In particular, the Pennsylvania State Police continued to employ Defendant Schaeffer after he was disciplined for misleading his supervisors related to overtime.

152.    Further, the Pennsylvania State Police continued to allow Defendant Schaeffer to be the driving force behind the spurious investigations into Plaintiffs.

153.    As a direct and proximate result of the unlawful conduct of Defendants as aforesaid, Plaintiffs have suffered and will continue to suffer irreparable injury as follows:

      a.    The loss of overtime wages;

      b.    Damage to their reputation as deputy sheriffs;

      c.    Damage to their reputation as law enforcement officers;

      d.    Damage to their reputation as members of the Westmoreland County Fugitive Apprehension Unit;

      e.    Damage to their personal reputations;

      f.    Damage to their ability to effectively prosecute crimes; and

      g.    Other damages yet to be ascertained.

154.    As a result of the proximate result of the unlawful conduct of Defendants, Plaintiffs have suffered damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial.

155.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest, and costs as allowable by federal law.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of

said Court, plus court costs, interest, attorneys' fees, declaratory and prospective

injunctive relief and other damages as the Court deems appropriate.

**A JURY TRIAL DEMANDED**

**COUNT IV—STATE LAW CLAIM:  VIOLATION OF RIGHT TO
REPUTATION**

**Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon
Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton v. Jeffrey
Schaeffer, individually, and the Pennsylvania State Police**

156.    The preceding paragraphs are incorporated as if fully set forth herein.

157.    Reputation is protected by Article I, Section 1 and Section 11 of the

Pennsylvania Constitution. *See **R. v. Com., Dep't of Pub. Welfare***, 636 A.2d 142, 149

(Pa. 1994).

158.    In Pennsylvania, reputation is "a fundamental interest which cannot be

abridged without compliance with constitutional standards of due process and equal

protection." ***Id***.

159.    The actions of Defendants abridged Plaintiffs right to reputation without

due process and equal protection.

160.    Defendants' actions in investigating Plaintiffs was motivated by the

personal animus of Defendant Schaeffer instead of a bona fide state interest.

161.    Defendants did not accord any due process or equal protection to Plaintiffs

during the course of the investigations.

162.    Plaintiffs will now be required to reveal that they were previously investigated for wrongdoing in any criminal prosecution in which they are required to testify as officers or affiants.

163.    Such revelation will damage Plaintiffs' reputation as law enforcement officers and hinder their ability to perform their job.

164.    Further, such revelations will damage Plaintiffs' reputations as law abiding citizens.

165.    Defendants' acts were done with malice and were done with willful, wanton, or reckless disregard for Plaintiffs' constitutional and civil rights, thereby subjecting Defendants to punitive damages.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary, compensatory, and punitive damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

**A JURY TRIAL DEMANDED**.

**COUNT V—STATE LAW CLAIM:  ABUSE OF PROCESS**

**Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton v. Jeffrey Schaeffer, individually, and the Pennsylvania State Police**

166.    The preceding paragraphs are incorporated as if fully set forth herein.

167.    Defendants used a legal process against Plaintiffs; e.g. a criminal investigation.

168.    This process was used primarily to accomplish a purpose for which it was not intended; e.g. to tarnish the reputation of Plaintiffs and to push for false criminal charges against Plaintiffs.

169.    Defendants' acts were done with malice and were done with willful, wanton, or reckless disregard for Plaintiffs' constitutional and civil rights, thereby subjecting Defendants to punitive damages.

170.    As a direct and proximate result of the unlawful conduct of Defendants as aforesaid, Plaintiffs have suffered and will continue to suffer irreparable injury as follows:

     h.  The loss of overtime wages;

     i.  Damage to their reputation as deputy sheriffs;

     j.  Damage to their reputation as law enforcement officers;

     k.  Damage to their reputation as law abiding citizens;

     l.  Damage to their reputation as members of the Westmoreland County Fugitive Apprehension Unit;

     m.  Damage to their ability to effectively prosecute crimes; and

     n.  Other damages yet to be ascertained.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary, compensatory, and punitive damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

**JURY TRIAL DEMANDED**

## COUNT VI—STATE LAW CLAIM:  DEFAMATION

**Irvin Shipley, John Dixon, Brian Matthews, Robby Orbin, Ryan Walker, Brandon Stephenson, Jacob Shaffer, Tyler Shuey, Cole Bier, and Maclean Walton v. Jeffrey Schaeffer, individually, and the Pennsylvania State Police**

171.    The preceding paragraphs are incorporated as if fully set forth herein.

172.    Defendant Schaeffer made the following statements that were defamatory in character against Plaintiffs:

      o.  That they conducted an illegal search and seizure;

      p.  That they were physically inappropriate with a female while she was detained; and

      q.  That they were guilty of crimes.

173.    Defendant Schaeffer published these defamatory statements to PSP troopers, PSP employees, and employees of the Westmoreland County Sheriff's Department.

174.    Defendant Schaeffer applied these statements to Plaintiffs.

175.    It was understood by those who heard the statements of Defendant Schaeffer that these statements were defamatory.

176.    It was understood by those who heard the statements of Defendant Schaeffer that these statements applied to Plaintiffs.

177.    Plaintiffs were specially harmed by these statements because it resulted in their placement on administrative duties and injured their reputation among fellow law enforcement officers and the community.

178.    Defendant Schaeffer's comments constitute defamation *per se* because the comments ascribed conduct, character, or a condition to Plaintiffs which adversely affected Plaintiffs' fitness for the proper conduct of their trade or profession.

179.    Defendant Schaeffer's comments constitute defamation *per se* because the comments indicate that Plaintiffs engaged in criminal activity.

180.    Defendant Schaeffer's acts were done with malice and were done with willful, wanton, or reckless disregard for Plaintiffs' constitutional and civil rights, thereby subjecting Defendants to punitive damages.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary, compensatory, and punitive damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/ D. Robert Marion Jr.
D. Robert Marion Jr., Esq.
PA ID 313469
CHARLTON LAW
617 S. Pike Road
Sarver, Pa 16055
Telephone:    724.540.1161
Fax:            724.540.1164
bobby@charltonlawyers.com

# EXHIBIT A



**James Albert**
**Sheriff**

**Jennifer Shipley**
**Chief Deputy**

## Sheriff's Office

**2 N Main Street**
**Greensburg, PA 15601**
**(P): 724-830-3457 (F): 724-830-3808**

### COMPLAINT

#### JANUARY 21, 2025

I, James Albert, Sheriff of Westmoreland County am filing this complaint against Lieutenant Jeffrey Schaeffer of Troop A/Greensburg.

This complaint is being filed for concerns of a tainted and biased criminal investigation that has been initiated by Lieutenant Schaeffer. The subjects of the investigation are several of my Deputies.

To provide an overview, I will list in chronological order a series of events that have occurred dating back to the 2022 calendar year.

1. In 2022, there were 2 separate occurrences in which Deputies from my Fugitive Apprehension Unit (FAU) conducted warrant services in Fayette County. In both instances, Lieutenant Schaeffer spoke to representatives of my Office to make complaints with regard to our authority.

   In both instances, internal reviews determined there were no policy violations. Lieutenant Schaeffer was advised of the findings. He expressed his dissatisfaction with the results, but declined to follow up with the direction to speak with me.

   I was later notified by the Westmoreland County District Attorney that she was contacted about the above referenced incidents. She advised that there was a concern brought to her regarding our Deputies authority, but ultimately, she indicated there was no jurisdictional concern/issue regarding our service of a warrant.

   Ultimately, there was no further action on the above incident.

2. On December 12, 2024, Deputies from my FAU were requested to assist the Mount Pleasant Police Department. The nature of the incident involved an Active Shooter.

Several of my Deputies responded and worked with representatives from the Mount Pleasant Police Department, the Office of Attorney General and the Westmoreland County Park Police. My Deputies were requested to assist with locating the shooter who fled the scene.

Along with representatives from the above-named agencies, my FAU Deputies went to the residence of the shooter. They announced their presence, and were ultimately met with a female who exited the residence. The female identified herself as the step-mother of the shooter and she gave consent to my Deputies to search the residence for their target. The search was negative for their target.

Ultimately, through searching other locations and collecting information, my Deputies located the target and he and peacefully surrendered to them. The target was transported to the Mount Pleasant Police Department.

At that time, a Trooper was at the Department and he advised that PSP was handling the investigation. The Trooper requested my Deputies to transport the target to Troop A Barracks, which my Deputies completed.

3. On Friday, December 20, 2024, Lieutenant Schaeffer contacted my Office and spoke with my Chief Deputy. He requested to speak directly to me. Upon calling Lieutenant Schaeffer, he advised he needed to speak to me in person regarding an incident involving my Deputies.

On this same date, Lieutenant Schaeffer came to my Office and met with myself and my Solicitor. He advised his agency was conducting a criminal investigation on my FAU Deputies that were involved in the Mount Pleasant incident that occurred on December 12, 2024.

Lieutenant Schaeffer provided very little information. When asked what crime my Deputies committed, he indicated there was an improper search and unlawful detention. I also asked "who" initiated the complaint and Lieutenant Schaeffer responded by stating it was the "parties involved" in the shooting incident.

Lieutenant Schaeffer advised that Sergeant Dubovi (unsure of spelling) would be following up with me to schedule interviews with my Deputies. Lieutenant Schaeffer advised the Sergeant would contact me after the holidays.

On this same date, I placed all FAU Deputies involved on administrative duties due to the investigation. This includes the prevention of working overtime details as it relates to the active services of warrants.

4. December 20-24, 2024, an internal review was conducted on the incident from December 12, 2024. The review resulted in finding no evidence of misconduct and my Deputies acted within policies and procedures and in accordance with the law.

5. On January 14, 2025, I placed a call to Lieutenant Schaeffer to follow up because I had not yet heard from his Sergeant. Lieutenant Schaeffer was unavailable, but I was connected to and spoke with Sergeant Duvobi.

   Sergeant Duvobi advised he was assigned the investigation by Lieutenant Schaeffer. He advised he already spoke with the Mount Pleasant Police and the Westmoreland County Park Police. He requested a date/time to interview my Deputies, and we ultimately scheduled for him to come to my Office on January 23, 2025 at 1100 hours.

6. Between December 20, 2024 and January 20, 2025, through various law enforcement channels, I received several notifications of information relevant to the investigation that can be outlined as follows:
   a. Lieutenant Schaeffer has expressed that he as a "personal vendetta" against the Westmoreland County Sheriff's Office.
   b. The "vendetta" is based on his anger towards how the Fayette County incidents in 2022 were resolved without repercussions against my Deputies.
   c. Lieutenant Schaeffer purposely injected himself into the PSP active shooter investigation with intent to find fault in my Deputies involvement. Specifically, his involvement in the Search Warrant PSP conducted on the target's residence.
   d. Lieutenant Schaeffer ordered Troopers to conduct a criminal investigation on my Deputies without being able to explain what or why they are investigating.
   e. Lieutenant Schaeffer ignored initial investigative reports by Troopers regarding Deputies actions that showed no unlawful activity or any misconduct and insisted on further investigation to "yield results".
   f. Lieutenant Schaeffer has continued to pressure Troopers to keep investigating even after further investigation has exonerated my Deputies.
   g. Lieutenant Schaeffer was forced to transfer out of Troop B Uniontown Barracks to Troop A Greensburg Barracks because of an internal inquiry with circumstances that put his veracity into considerable question.

Taking into consideration all information in this report, I am requesting that Lieutenant Jeffrey Schaeffer have no direct or indirect involvement in the criminal investigation against my Deputies.

Additionally, I am requesting preservation of all reports, recordings of interviews, records, radio transmission recordings, body camera recordings regarding the investigation of the Active Shooter incident on December 12, 2024 or subsequent investigation initiated by Lieutenant Schaeffer. Specifically, any body camera footage for Troopers and Lieutenant Schaeffer conducting the subsequent search warrant at the target's residence in Mount Pleasant.

James Albert, Sheriff

# EXHIBIT B



# Borough of Mount Pleasant

1 Etze Avenue Municipal Building, Mount Pleasant, Pennsylvania 15666
Tel. 724-547-6745    Fax 724-547-0115
www.mtpleasantboro.com   or   www.mountpleasantborough.com

January 27, 2025

Sheriff James Albert
Westmoreland County Courthouse
2 North Main Street
Greensburg Pa 15601

Dear Sheriff Albert,

On 12-12-2024 our police department received a call about a shooting and an individual with a gun in the Borough of Mount Pleasant. At the time of this call, we had one (1) officer on our daylight shift. Officer Joll requested assistance for this incident. Upon requesting assistance Sgt. Irv Shipley dispatched several sheriff units to assist us. This was a hectic incident involving a gun and several other individuals.

When your sheriff units arrived, they contacted Officer Joll and asked what he needed. At that time, Officer Joll conversed with Sgt. Shipley and your guys did what was asked of them.

Myself and my Department would personally like to thank you, and the guys who responded to the incident on 12-12-2024. All of your deputies conducted themselves in a professional manner and were a huge asset to this incident. Everything was done in a swift, timely fashion and an exceptionally professional manner. Without their assistance this would not have ended in a successful and safe arrest of the subjects involved.

As a Police Chief, I really respect the professional working relationship that our two (2) departments have and I know that will continue as well. We have called for your assistance on many occasions in the past and as always, we got the job done as a team.

Much appreciated,

Chief George Grippo
Mount Pleasant Borough Police

## **VERIFICATION**

I, Irvin Shipley, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


    /s/ *Irvin Shipley*_____
    Irvin Shipley

## **<u>VERIFICATION</u>**

I, John Dixon, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


    /s/ *John Dixon*              
John Dixon

## **<u>VERIFICATION</u>**

I, Brian Matthews, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


    /s/ *Brian Matthews*
Brian Matthews

## **VERIFICATION**

I, Robby Orbin, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


    /s/ *Robby Orbin*
Robby Orbin

## **<u>VERIFICATION</u>**

I, Ryan Walker, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


  /s/ *Ryan Walker*
Ryan Walker

## <u>VERIFICATION</u>

I, Brandon Stephenson, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


　　　　　　　　　　　　　 _/s/ *Brandon Stephenson*_____
　　　　　　　　　　　　　 Brandon Stephenson

## **VERIFICATION**

I, Jacob Shaffer, do hereby verify that the statements contained in the foregoing

document are true and correct to the best of my knowledge, information, and belief.  I understand

that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to

unsworn falsification to authorities.


 /s/ *Jacob Shaffer*
Jacob Shaffer

## **<u>VERIFICATION</u>**

I, Tyler Shuey, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_/s/ *Tyler Shuey*_____
Tyler Shuey

## **<u>VERIFICATION</u>**

I, Cole Bier, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


 /s/ *Cole Bier*_____
Cole Bier

## <u>VERIFICATION</u>

I, Maclean Walton, do hereby verify that the statements contained in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


_/s/ *Maclean Walton*_____
Maclean Walton