IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRVIN SHIPLEY, *et al.*, | ) |
| Plaintiffs, | ) 2:25-CV-631 |
| v. | ) |
| JEFFREY SCHAEFFER & THE PENNSYLVANIA STATE POLICE, | ) |
| Defendants. | ) |

## OPINION

Plaintiffs, all Deputy Sheriffs with Westmoreland County, Pennsylvania, are members of the Westmoreland County Fugitive Apprehension Unit ("FAU"). As members of the FAU, Plaintiffs are responsible for serving criminal bench warrants, making arrests, and interacting with other local law enforcement agencies. Plaintiffs' claims arise out of their interactions with local Pennsylvania State Police (PSP) and with one of its officials, Jeffrey Schaeffer. Plaintiffs allege that Mr. Schaeffer initiated baseless investigations into them, which led to temporary loss in responsibilities, pay, and reputation.

Plaintiffs initiated this action alleging both federal constitutional and state-law violations arising from Defendants' conduct. ECF 1. Under 42 U.S.C. § 1983, Plaintiffs bring constitutional claims based on their asserted right to privacy and right to be free from reckless investigations against Mr. Schaeffer, as well as a claim under a *Monell* theory of liability against the PSP. Plaintiffs also bring three counts under state law, asserting both state tort and state constitutional claims. Before the Court is Defendants' motion to dismiss. ECF 10. For the following reasons, the Court will grant Defendants' motion and dismiss Plaintiffs' federal claims with prejudice and Plaintiffs' state-law claims without prejudice.

1

## BACKGROUND

### I. Factual Background

Plaintiffs' troubles with Defendants began in August 2022. The FAU, having to serve a felony bench warrant at a hotel in Fayette County, Pennsylvania, reached out to the PSP in Uniontown, Pennsylvania, for assistance. ECF 1 at ¶¶ 31–32. The PSP declined the FAU's request for assistance. *Id.* at ¶ 33. In serving the warrant, Plaintiffs uncovered an illegal firearm and subsequently reported the firearm to the PSP Uniontown division for further investigation. *Id.* at 34. Mr. Schaeffer was the Station Commander of the PSP Uniontown division at the time, and members of that division accused the FAU of "acting illegally" in response to the report about an illegal firearm. *Id.* at ¶¶ 35–36.

In December 2022, a very similar situation arose. The FAU had a different felony bench warrant to serve at a hotel in Fayette County, and again reached out to the PSP Uniontown division for assistance. *Id.* at 37–39. Again, the PSP declined the FAU's request to assist. *Id.* The subject of the warrant fled, leading to a foot chase with the FAU, and the subject threw an illegal firearm during the chase. *Id.* at 41–42. The FAU reported the illegal firearm to the PSP Uniontown division, and Mr. Schaeffer directly accused the FAU of "acting illegally" as a result. *Id.* at 42–48. Mr. Schaeffer lodged a formal complaint to the Westmoreland Chief Deputy and demanded that the Sheriff's office investigate and discipline the FAU. *Id.* The Westmoreland County Sheriff's office temporarily placed Plaintiffs on administrative duty, removing them from the field, and (with the Westmoreland District Attorney's office).investigated Mr. Schaeffer's allegations. *Id.* The investigation cleared the FAU of any wrongdoing. *Id.*

Plaintiffs' troubles with Mr. Schaeffer picked back up in 2024. In August 2024, Mr. Schaeffer transferred to the PSP division in Greensburg, Pennsylvania, where he acted as Criminal Investigation Section Commander. *Id.* at 49–50. In December 2024, the Mount Pleasant Borough Police Department requested the FAU's assistance with

an active shooter in the area. *Id.* at 52. The FAU responded and attempted to apprehend the subject. *Id.* at 53–55. Along with other law enforcement agencies, the FAU went to the subject's parents' residence and received consent to search the residence. *Id.* at 56–61. The subject was not there at the time, but he turned himself in to the FAU later that day. *Id.* The Mount Pleasant Borough PD determined that jurisdiction was better suited elsewhere and transferred the case to the PSP Greensburg division. *Id.*

Mr. Schaeffer, now at the PSP Greensburg division, learned of the FAU's involvement in apprehending the subject and attempted to launch another investigation through the PSP into Plaintiffs. *Id.* at 62–71. Mr. Schaeffer ordered lower-level troopers to investigate the FAU and labeled their actions surrounding the active shooter as an illegal search and seizure. *Id.* Mr. Schaeffer reached out to the Westmoreland County Sheriff to inform him, as well as the County Solicitor, that he was investigating Plaintiffs for illegal searches and seizure. *Id.* The Sheriff's office launched another internal investigation into Plaintiffs because of Mr. Schaeffer's allegations, placed Plaintiffs on administrative duty temporarily, and cleared Plaintiffs of any wrongdoing shortly thereafter. *Id.* at 72–73.

Mr. Schaeffer continued his own investigation into Plaintiffs by assigning a PSP sergeant to the matter. *Id.* at 74. The sergeant's investigation concluded that the allegations against Plaintiffs were "unfounded," to which Mr. Schaeffer became angry and urged the sergeant to charge Plaintiffs with "something." *Id.* at 81–85.

In January 2025, one member of the FAU, Plaintiff Irvin Shipley, realized that he and Mr. Schaeffer both went to the same high school. *Id.* at 77–80. Mr. Shipley and Mr. Schaeffer got into "a high-profile physical altercation" in high school, which resulted in the school suspending both parties. *Id.* Mr. Schaeffer never disclosed his prior fight with Mr. Shipley to his superiors, and Plaintiffs allege that Mr. Schaeffer's interest in

pursuing baseless allegations against them stems from this long-simmering high school grudge. *Id.*

Later that same month, the Westmoreland County Sheriff met with a PSP captain to discuss Mr. Schaeffer. *Id.* at 86–94. The PSP captain assured the Sheriff that Mr. Schaeffer did not have a vendetta against Mr. Shipley or Plaintiffs. *Id.* at 86. The PSP captain learned after this meeting about the personal history between Mr. Shipley and Mr. Shaeffer, and subsequently instructed the PSP sergeant to end his investigation and turn over his materials to the Westmoreland County DA's office. *Id.* at 88–94.

The PSP closed their investigation into Plaintiffs and turned over their materials to the DA's office. *Id.* The DA's office decided that there were no charges to pursue and informed both the PSP and Westmoreland County Sheriff's office of their conclusion. *Id.*

## II.  Procedural Background

Based largely on these facts, which the Court accepts as true, Plaintiffs brought claims against Mr. Schaeffer in his individual capacity and the PSP. Plaintiffs' first three claims (Counts I, II, & III) are brought under Section 1983, alleging violations of constitutional law. Plaintiffs' last three claims (Counts IV, V, & VI) allege state-law violations against both Defendants.

Plaintiffs' claims at Count I and Count II are brought only against Mr. Schaeffer. Count I alleges that Mr. Schaeffer violated Plaintiffs' federal constitutional right to privacy. Count II alleges that Mr. Schaeffer violated Plaintiffs' constitutional right to be free from a reckless investigation. Plaintiffs seek compensatory and punitive damages, as well as equitable relief at both counts.

Plaintiffs' claim at Count III is brought only against the PSP in its official capacity. Count III alleges that the PSP failed to properly train and supervise its officers, which makes the PSP liable for the complained-of constitutional violations that

Plaintiffs suffered under a *Monell* liability theory. Plaintiffs seek compensatory and prospective injunctive relief at Count III.

Defendants have moved to dismiss all counts.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if a plaintiff has failed to state a claim upon which relief can be granted. Because that is the case here for all of Plaintiffs' federal claims, the Court will dismiss Counts I, II, & III. With no federal claim surviving, the Court will decline to exercise supplemental jurisdiction over any of Plaintiffs' state-law claims.

### I.   Count I—Invasion of Privacy

Plaintiffs' first claim is for a violation of their constitutional right to privacy. Because this theory is on shaky ground after *Dobbs* and because Plaintiffs haven't, in any event, pled a disclosure of a personal matter, this claim fails.

"The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). Even so, the Third Circuit has recognized the constitutional right to privacy in two narrow situations based on the Supreme Court's finding of "zones of privacy" in cases like *Roe v. Wade*, 410 U.S. 113, 152–153 (1973). *See C.N.*, 430 F.3d at 178 (citing *Roe v. Wade*).

First, the Third Circuit has found a privacy interest "in avoiding disclosure of personal matters." *C.N.*, 430 F.3d at 178 (cleaned up). The "touchstone" deals with "an individual's reasonable expectations of confidentiality." *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011) (cleaned up). For information to be protected, it must "involve deeply rooted notions of fundamental personal interests derived from the Constitution." *Id.* at 176 (citing *Nunez v. Pachman*, 578 F.3d 228, 232 (3d Cir. 2009)) (cleaned up). The Third Circuit has found the following to be protected information: "a public employee's

medical prescription record; a minor student's pregnancy status; sexual orientation; and an inmate's HIV-positive status." *C.N.*, 430 F.3d at 179 (cleaned up).

Second, the Third Circuit has found a privacy interest "in independence in making certain kinds of important decisions," such as "matters relating to marriage, procreation, . . . and child rearing and education." *C.N.*, 430 F.3d at 178–79 (cleaned up). Plaintiffs' complaint does not allege a privacy interest based on this second type of privacy interest. *See, e.g.*, ECF 15 at 12–14 (only referring to information "released" and not an interference in making important decisions).

Plaintiffs here have failed to state a claim based on their asserted right to privacy. To begin with, as the Third Circuit in *C.N.* noted, there is no explicit right to privacy in the Constitution. *C.N.*, 430 F.3d at 178. Because the Third Circuit there relied on *Roe v. Wade* in finding a constitutional right to privacy, and *Roe* has since been overruled, it is questionable whether there is any remaining viability to this type of federal privacy claim. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

But even if this line of cases from the Third Circuit remains good law, Plaintiffs have not pled a plausible claim for an invasion to their right to privacy. The information disclosed must be of such a personal nature that it "involves deeply rooted notions of fundamental personal interests derived from the Constitution." *Doe*, 660 F.3d at 176 (cleaned up). At best, Plaintiffs alleged that Mr. Schaeffer released information "to others" obtained during meritless investigations. ECF 15 at 14. Mr. Schaeffer investigated Plaintiffs' actions on the job as Westmoreland County Deputy Sheriffs. According to Plaintiffs, that included their actions of delivering a felony bench warrant, conducting a search, and arresting a suspect. *See generally* ECF 1. That does not amount to information so "deeply rooted [in] notions of fundamental personal interests" that it becomes personal information protected by the Constitution. *See Doe*, 660 F.3d at 176 (cleaned up).

The difference between Plaintiffs' allegations and the cited examples from the Third Circuit for what counts as protected information is not one of degree, but of kind. Plaintiffs' complaint here as it relates to Mr. Schaeffer better sounds in state tort law—the allegations do not arise to a plausible constitutional violation. The Court will dismiss Plaintiffs' Count I against Mr. Schaeffer because it fails to state a claim. And because the fundamental nature of Plaintiffs' allegations do not amount to a constitutionally protected privacy interest, the Court finds that amendment would be futile. The dismissal will be with prejudice.

### II.    Count II—Reckless Investigation

Plaintiffs next assert a claim predicated on a reckless investigation—that is, their due-process rights were violated due to Mr. Schaeffer's reckless investigation. The problem with this claim is that the Third Circuit has "never recognized an independent due process right to be free from a reckless investigation." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020). "Even if such a claim were cognizable, it could only arise under the Fourth Amendment." *Id.* (cleaned up). Further, because the Third Circuit has never found there to be an independent constitutional violation based on a reckless investigation alone, qualified immunity shields officers from liability because the right would not be "clearly established at the time of the investigation." *Id.* at 207 n.9.[1]

Dismissal is therefore appropriate for Plaintiffs' claim at Count II. Plaintiffs bring their claim under the Fourteenth Amendment Due Process Clause, but the claim could only be cognizable under the Fourth Amendment. *Id.* at 209. And even if Plaintiffs had brought the claim under the Fourth Amendment, qualified immunity

---

[1] Some courts have recognized a right to be free from a reckless investigation. See, e.g., *Akins v. Epperly*, 588 F.3d 1178, 1183–84 (8th Cir. 2009); *Samuelson v. Jewell School District 8*, 725 F. Supp. 3d 1195, 1215 (D. Or. 2024). But the Supreme Court has never recognized such a right. *See Cesnalis*, 973 F.3d at 207. Absent Supreme Court or controlling Third Circuit precedent, or a robust consensus from the Court of Appeals, the right cannot be considered "clearly established." *See Jefferson v. Lias*, 21 F.4th 74, 81 (3d Cir. 2021).

would shield Mr. Schaeffer from liability because the right has not been clearly established. *See id.* at 209 n.9. The Court will thus dismiss Plaintiffs' Count II against Mr. Schaeffer. Amendment would be futile because, even with new facts, Plaintiffs cannot establish that Mr. Schaeffer violated clearly established law connected to their rights against reckless investigation. Dismissal will be with prejudice.

### III.  Count III—*Monell* Liability

At Count III, Plaintiffs sue the PSP directly in its official capacity. "[T]he Eleventh Amendment bars claims . . . against the PSP, a state agency that did not waive its sovereign immunity." *Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011); *see Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) ("The Eleventh Amendment to the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court, regardless of the relief sought."). Because sovereign immunity bars suit, the Court will dismiss Count III against the PSP with prejudice.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss (ECF 10). All three federal-law claims brought at Counts I, II, & III will be dismissed with prejudice. Because no federal claims survive, the Court will decline to exercise supplemental jurisdiction over any of Plaintiffs' state-law claims. 28 U.S.C. § 1367(c)(3). A separate order follows.

DATED this 28th day of January, 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge